IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| USAA MUTUAL FUNDS TRUST on behalf of its series the USAA TAX-EXEMPT INTERMEDIATE TERM FUND and WELLS FARGO & CO.,<br><br>                Plaintiffs,<br><br>v.<br><br>JORDANELLE SPECIAL SERVICE DISTRICT, a body corporate and politic, JORDANELLE SPECIAL SERVICE DISTRICT SPECIAL IMPROVEMENT DISTRICT NO. 2005-2, WASATCH COUNTY, a political subdivision of the State of Utah acting through the WASATCH COUNTY COUNCIL,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER ON MOTIONS TO DISMISS<br><br><br><br>Case No. 2:14-CV-787 TS<br><br>District Judge Ted Stewart |

      This matter is before the Court on a Motion to Dismiss filed by Defendants Jordanelle Special Services District and Jordanelle Special Service District Special Improvement District No. 2005-2 (collectively, "JSSD"). Defendant Wasatch County ("County") has filed its own Motion to Dismiss and joins in the Motion filed by JSSD. For the reasons discussed below, the Court will grant the County's Motion to Dismiss and will grant in part and deny in part the Motion to Dismiss filed by JSSD.

## I. BACKGROUND

      The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true for the purposes of these Motions.

On October 19, 2005, the Wasatch County Council, acting as the governing authority of JSSD, passed Resolution No. 2005-18 adopting a Notice of Intention to create an assessment area south of the Jordanelle Reservoir (the "Assessment Area")—which was a special improvement district known as "Jordanelle Special Service District Special Improvement District No. 2005-2,"—for the purpose of financing the acquisition, construction and installation costs of certain water and sewer improvements, including a sewer treatment facility to benefit certain properties within the Assessment Area.  The resolution contemplated that the bonds that financed the improvements would be repaid with revenue from special assessments to be levied against properties to be improved or which may be directly or indirectly benefited by any of such improvements.  On February 15, 2006, the Wasatch County Council, acting as JSSD's governing body, adopted a resolution creating the Assessment Area.

On May 16, 2007, the Wasatch County Council authorized the issuance and sale of Bond Anticipation Notes for Jordanelle Special Service Improvement District Series 2007 in the principal amount of $18,470,490 (the "Series 2007A Bonds") to refund previously issued interim warrants and to finance additional costs of the Improvements.  On October 24, 2007, the Wasatch County Council authorized the issuance and sale of the following additional Bond Anticipation Notes for the Jordanelle Special Service Improvement District: (1) Series 2007B in the principal amount of $10,000,000 (the "Series 2007B Notes"); and (2) Series 2007C in the principal amount of $10,000,000 (the "Series 2007C Notes") to further finance additional costs

of the improvements (collectively, the "Series 2007 Notes" or the "2007 Notes."). Plaintiffs, the Bondholders, purchased the 2007 Notes.[1]

When the Notes became due in 2009, and JSSD was unable to issue and sell assessment bonds to retire the Notes, JSSD requested that the Bondholders accept replacement bonds as temporary financing. On June 17, 2009, the Wasatch County Council authorized the issuance of three series of Replacement Bond Anticipation Notes, Series 2009, in the aggregate principal amount of $40,200,619 ("Series 2009 Notes" or the "2009 Notes") to be exchanged for the Series 2007 Notes.

On July 8, 2009, JSSD adopted an assessment ordinance (the "Assessment Ordinance") to levy assessments on property located within the Assessment Area sufficient to pay debt service on assessment bonds to be issued to repay the Series 2009 Notes. The Assessment Ordinance imposes a lien against all the assessed property within the Assessment Area. If a property owner fails to pay an assessment with respect to a particular parcel of assessed property, that parcel is subject to foreclosure by JSSD.

On August 12, 2009, the Wasatch County Council adopted Resolution 2009-11, which authorized the issuance of the Jordanelle Special Service District, Utah, Special Assessment Bonds, Series 2009A, Series 2009B, and Series 2009C in the aggregate principal amount of $40,850,000 (the "Series 2009 Bonds" or the "2009 Bonds"), which were to be secured by the assessments paid by owners of the assessed properties.

---

[1] Initially, one of the Bondholders, Koch Financial, was not a named Plaintiff. However, Koch Financial was permitted to intervene as a plaintiff. *See* Docket No. 50. The intervention of Koch Financial moots one of the arguments raised in JSSD's Motion to Dismiss.

JSSD entered into the Indenture of Trust and Pledge dated August 1, 2009 (the "Indenture") to authorize the sale of the Series 2009 Bonds, with Zions First National Bank acting as the Trustee.  In accordance with the Indenture, JSSD issued the Series 2009 Bonds in three series: the Series 2009A Bonds, the Series 2009B Bonds, and the Series 2009C Bonds. The Series 2009A Bonds were issued in the total principal amount of $19,626,000; the Series 2009B Bonds were issued in the total principal amount of $10,611,000, and the Series 2009C Bonds were issued in the total principal amount of $10,613,000, for a total aggregate principal amount of $40,850,000.  Plaintiffs were the purchasers of the Bonds.

Ultimately, certain property owners in the Assessment Area failed to make assessment payments.  Those properties were foreclosed by JSSD and JSSD took title to those properties (the "foreclosed properties").  JSSD has attempted to transfer the foreclosed properties to the Bondholders in full satisfaction of its obligations, giving rise to Plaintiffs' breach of contract claim.  In addition, Plaintiffs allege that JSSD has failed to pay all delinquent and current assessments on these properties.  Plaintiffs further allege that JSSD breached its representations and covenants in the Indenture by misusing the bond proceeds and assessment funds.

Plaintiffs bring claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, constructive trust, appointment of a receiver, accounting, and for declaratory judgment.

## II.  MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

the nonmoving party.[2]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[4]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[7]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[8] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[9]  The Court "may consider documents

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[8] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[9] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[10]

## III.  DISCUSSION

A.    WASATCH COUNTY

Plaintiffs assert claims against Defendant Wasatch County for unjust enrichment, constructive trust, accounting, and declaratory judgment.  The County seeks dismissal of all claims, arguing that they are barred by Utah statute, conflict with Utah case law, and are not supported by sufficient factual allegations.

The Utah Constitution permits the Utah legislature to authorize a county, city, or town to establish a special service district[11] and the legislature has done so.[12]  A special service district is "a body corporate and politic with perpetual succession, separate and distinct from the county or municipality that creates it."[13]  Further, Utah law provides that "[a] special service district bond, note, or other obligation or indebtedness, whether or not payable from taxes, may not be . . . considered to be a bond, note, or other obligation or indebtedness of or to be enforceable against the state or a county, municipality, school district, or other political subdivision of the state."[14]

Under the plain language of this statute, Defendant Wasatch County cannot be held liable for JSSD's obligations related to the Bonds.  The Private Placement Memorandum and the Indenture similarly make clear that the County is not responsible for repayment of the bonds.

---

[10] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[11] Utah Const. art. XI, § 7(1).

[12] Utah Code Ann. § 17D-1-201.

[13] *Id.* § 17D-1-103(1)(a)(i).

[14] *Id.* § 17D-1-508(1).

Both documents contain multiple provisions stating that the Bonds are limited obligations of JSSD and are not payable by the County.  Thus, Plaintiffs' claims against the County must be dismissed.

Despite this, Plaintiffs argue that Defendant County may be liable under an alter ego theory.  The parties make various arguments concerning the continued applicability of the alter ego doctrine in light of Utah Code Ann. § 17D-1-508(1).  Even assuming for the purposes of this Motion that the doctrine could apply in this situation, Plaintiffs' alter ego claim fails.

> For one corporate entity to be the alter ego of another, two requirements must be met.  First, "there must be such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist."  Second, "the observance of the corporate form [must] sanction a fraud, promote injustice, or [cause] an inequitable result [to] follow."[15]

The Court can assume the first element, the formalities element, has been met.[16]  The second element, the fairness element, however, has not been adequately alleged.

Plaintiffs have failed to properly allege that respecting the separation between JSSD and the County will promote fraud, injustice, or cause an inequitable result.  The reasoning of *Municipal Building Authority of Iron County v. Lowder* provides helpful guidance on this point.  There, the court stated,

> Certainly, no fraud, injustice or inequity is worked on prospective bond holders.  The nature of the financing plan is clearly disclosed to the bond holders, who are fully informed that their only security lies in the mortgage of the jail facility.

---

[15] *Mun. Bldg. Auth. of Iron Cty. v. Lowder*, 711 P.2d 273, 278 (Utah 1985) (quoting *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)) (alterations in original).

[16] Courts consider a variety of factors, known as the *Colman* factors, in determining this portion of the alter ego test.  *See Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012) (citing *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)).  Plaintiffs' brief focuses on the *Colman* factors.

When the bond holders purchase, they cannot legitimately do so on the
expectation that they will be able to look to the county or its taxpayers for
repayment in the event the lease is cancelled.[17]

The same is true here.  It was made clear to any prospective purchasers that the Bonds
were special limited obligation bonds and not general obligation bonds of the County.  Thus,
Plaintiffs cannot argue that they believed the County would somehow cover the obligations of
JSSD.  Like the plaintiffs in *Lowder*, Plaintiffs' security interest lies elsewhere.

Plaintiffs argue that this "misses the point" and that "the salient question is whether
justice allows entities that act jointly to cause an injury to use the entity form to escape
liability."[18]  This argument, however, merely raises the questions and highlights the problem
with Plaintiffs' Amended Complaint.  Plaintiffs make only conclusory allegations that JSSD and
the County acted jointly and that recognizing JSSD as a separate entity from the County "would
sanction a fraud, promote injustice, or promote an inequitable result."[19]  Such conclusory
allegations are insufficient to withstand a motion to dismiss.  "A party attempting to prevail on
an alter ego theory must still appeal to the court's equitable powers and articulate how 'the
observance of the corporate form would sanction a fraud, promote injustice, or an inequitable
result would follow.'"[20]  Plaintiffs have failed to do so.  Therefore, dismissal is appropriate.

Plaintiffs further argue that resolution of the alter ego question is not proper on a motion
to dismiss, citing a number of cases describing the factual nature of that analysis.  However,
those cases focus on the factors courts consider in determining the formalities element of the

---

[17] *Lowder*, 711 P.2d at 278 (citation omitted).

[18] Docket No. 33, at 40.

[19] Docket No. 14 ¶ 182.

[20] *Jones & Trevor Mktg., Inc.*, 284 P.3d at 637 n.6 (quoting *Norman*, 596 P.2d at 1030).

alter ego test.  As set forth above, the Court can assume this portion of the test for the purposes of this Motion.  The County's Motion focuses on the fairness element.  As stated, Plaintiffs provide nothing but conclusory allegations in support of that element.  Therefore, the Court will grant the County's Motion and dismiss Plaintiffs' claims against the County.

B.      BREACH OF CONTRACT

        Plaintiffs' breach of contract claim consists of three parts.  First, Plaintiffs argue that JSSD breached the Indenture by transferring the foreclosed properties to the Bondholders.  Second, Plaintiffs argue that JSSD breached the Indenture by unlawfully levying the assessments and by failing to faithfully account for, collect, settle, and pay the assessments.  Finally, Plaintiffs allege that JSSD breached by failing to purchase the Series 2009 Bonds tendered by the Bondholders.  The Court will address each argument in turn.

        1.      *Transfer of Foreclosed Properties*

        Plaintiffs allege that they have the right to elect to direct JSSD to transfer ownership of the foreclosed property and, absent such direction, JSSD must retain the property and pay all assessments.  Plaintiffs assert that, by purporting to transfer the foreclosed property to Plaintiffs, JSSD breached the Indenture.  JSSD argues that Plaintiffs' claim fails because it was permitted by Utah law to transfer the foreclosed property to the Bondholders.  JSSD relies on Utah Code Ann. § 11-42-504(2)(a), which states in pertinent part, that a local entity "may elect to transfer title of the property to the owners of all outstanding assessment bonds . . . as payment in full for all delinquent assessments with respect to the property."[21]

---

        [21] Utah Code Ann. § 11-42-504(2)(a).

The Court agrees that Plaintiffs have the sole right under the Indenture to elect to direct JSSD to transfer ownership of the foreclosed properties.  Absent such direction, JSSD must pay all assessments on the properties so long as JSSD retains ownership of the property.  JSSD's purported attempt to transfer the foreclosed properties absent the direction of Plaintiffs constitutes a breach of the Indenture.  However, the Court agrees with JSSD that it need not retain title to the foreclosed properties indefinitely.  JSSD may sell the property in accordance with Utah Code Ann. § 11-42-504(2)(b).  But until it does, JSSD must pay all assessments.

Section 6.5 of the Indenture provides a detailed procedure in the event of a default in the payment of assessments.  Under that provision, when a default occurs JSSD must pursue a summary sale of the property.  If no one bids the amount due on the assessments plus interest and costs, the property is deemed sold to JSSD for that amount.  "So long as [JSSD] retains ownership of the property, it shall pay all delinquent Assessment installments and all Assessment installments that become due, including the interest on them."[22]  Finally, under Section 6.5, "[t]he Bondholders may at their discretion, elect to direct [JSSD] to transfer ownership of the property to the owner of the Series 2009 Bonds in full satisfaction of all outstanding assessment obligations hereunder and any payment obligations of the Issuer to the Bondholder of the Series 2009 Bonds."[23]

JSSD's argument that it has the ability to transfer the foreclosed properties without direction from Plaintiffs is premised on Utah Code Ann. § 11-42-504(2)(a).  As set forth above, that provision states that a local entity "may elect to transfer title of the property to the owners of

---

[22] Docket No. 14 Ex. C § 6.5.

[23] *Id.*

all outstanding assessment bonds . . . as payment in full for all delinquent assessments with respect to the property." JSSD argues that this provision was an implied term of the Indenture and, thus, it was statutorily permitted to transfer the foreclosed properties.

JSSD reads too much into this statute. By its clear language, the statute is permissive, not mandatory. Under the statute, a local entity "may elect to transfer title of the property" to the owners of outstanding bonds. However, nothing in the statute requires the local entity to transfer title and nothing in the statute prohibits the parties from contracting with each other to determine when that election should be made and by whom. JSSD made its election in the Indenture and elected to be governed by the direction of the Bondholders. The Indenture is consistent with the statute in that it allows JSSD to transfer title of the foreclose properties to the Bondholders, but adds the requirement that the election be made at the direction of the Bondholders.

To the extent that the Indenture and Section 11-42-504(2)(a) are inconsistent, the Indenture provides clear evidence of the parties' intent to remove any right JSSD may have had to unilaterally transfer the foreclosed properties. The Indenture provides that Plaintiffs "may at their discretion, elect to direct the Issuer to transfer ownership of the property." This provision cannot be squared with JSSD's argument that it had the unilateral authority to transfer the foreclosed properties. JSSD is correct in arguing that this provision does not state, as other sections of the Indenture do, that the Bondholders may make the election at their "sole" discretion, but neither does it provide that JSSD may make the election unilaterally. At best, JSSD could argue that the omission of the word "sole" creates an ambiguity, but it has not and the Court agrees that the Indenture is unambiguous.

A recent amendment to Section 11-42-504(2)(a) provides further support for the notion that JSSD did not maintain a unilateral right to transfer the foreclosed property.  Section 11-42-504(2)(a) now requires that the local entity and the Bondholders agree to the election to transfer and requires an indenture, private placement memo, or other document explicitly disclose the terms of such an agreement.[24]  This change provides evidence that the statute prior to the amendment was not intended to give a local entity the unilateral right to transfer foreclosed property.

JSSD argues that Plaintiffs' construction is inconsistent with the limited nature of the 2009 Bonds.  This argument seems to assume that if JSSD cannot transfer the foreclosed properties to Plaintiffs it must retain ownership.  Nothing in the Indenture or Utah law requires this result.  Rather, JSSD has the ability to sell the foreclosed property in accordance with Utah Code Ann. § 11-42-504(2)(b).  But while it retains ownership of the property, JSSD must pay all delinquent assessment installments and all assessment installments that become due.

Finally, JSSD argues that its interpretation of the Indenture should be adopted because, otherwise, JSSD would be permitted to sell the foreclosed properties for less than what they are worth.  JSSD is correct that Utah law only requires the selling price "not be less than the amount sufficient to reimburse the local entity for all amounts the local entity paid with respect to an assessment on the property."[25]  However, it does not necessarily follow that JSSD may sell the foreclosed properties for less than fair market value.  Doing so has the potential of giving rise to a claim for breach of the covenant of good faith and fair dealing, as it would destroy Plaintiffs'

---

[24] Utah Code Ann. § 11-42-504(2)(a)(i)–(ii).

[25] *Id.* § 11-42-504(2)(b).

right to receive the fruits of the contract since the properties were pledged as collateral.  Thus, this argument does not support JSSD's interpretation of the Indenture.  Dismissal of the claim on this basis is not appropriate.

2. *Mismanaging and Devaluing the Properties*

Plaintiffs further allege that JSSD breached its obligations under the Indenture in a number of ways, including: (a) using bond proceeds to finance projects outside the Assessment Area; (b) using bond proceeds to finance projects that were not identified in the 2005 Notice of Intention; (c) using bond proceeds to construct a wastewater treatment facility (the "Facility") that has never been placed in operation and is capable of serving far more residential units than would be permitted in the Assessment Area; (d) using bond proceeds to acquire land for the Facility even though JSSD already owned land for the facility; (e) charging large administrative fees with no supporting documentation; (f) maintaining inconsistent draw sheets; (g) impairing the development potential and marketability of the properties in the Assessment Area by imposing excessive and illegal exactions; (h) refusing to pay assessments on the properties it obtained through foreclosure sales; and (i) failing to purchase the Series 2009 Bonds tendered by the Bondholders.  JSSD argues that the Assessments were lawfully levied, that it did not use the Bond Proceeds in the ways alleged by Plaintiffs, and that it faithfully accounted for, collected, settled, and paid the Assessments to Plaintiffs.

The Indenture states that JSSD is "responsible for the lawful levy of all Assessments . . . and for the faithful accounting, collection, settlement, and payment of the Assessments."[26] Additionally, the Indenture provides that "[n]o Assessment will exceed the benefit to be derived

---

[26] Docket No. 14 Ex. C § 6.6.

directly or indirectly from the Improvements by the property assessed, and no parcel of property will bear more than its proportionate share of the cost of the Improvements to be made."[27]

Plaintiffs' myriad allegations call into question whether JSSD complied with these provisions.  While JSSD challenges the accuracy of the allegations, the Court must accept Plaintiffs' well-pleaded allegations as true for the purposes of this Motion.  Therefore, the Court declines to dismiss Plaintiffs' breach of contract claim on this ground.  Moreover, to the extent that Plaintiffs' allegations do not give rise to a breach of the express terms of the Indenture, they do give rise to a claim for breach of the implied covenant of good faith and fair dealing for the reasons discussed below.  Therefore, dismissal is not appropriate.

3.      *Failure to Purchase*

Finally, Plaintiffs argue that JSSD breached the Indenture by failing to purchase the Series 2009 Bonds tendered by the Bondholders.  Section 2.8 of the Indenture allows a Bondholder to deliver an Optional Tender Notice that requires JSSD to purchase the outstanding 2009 Bonds.  In October 2015, Plaintiffs issued Optional Tender Notices to JSSD pursuant to Section 2.8, but JSSD failed to purchase the outstanding 2009 Bonds.  JSSD's failure represents an Event of Default under Section 8.1 of the Indenture.

JSSD argues, in a footnote, that this claim is barred by the first breach rule because Plaintiffs failed to accept the transfer of the foreclosed properties in satisfaction of the bond obligations.  However, because JSSD had no unilateral authority to transfer the foreclosed properties and Plaintiffs were under no obligation to accept that purported transfer, Plaintiffs' claims are not barred and this claim will not be dismissed.

---

[27] *Id.* § 6.2.

C.        BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"As a general rule, every contract is subject to an implied covenant of good faith."[28]

Under the covenant, there is "an implied duty that contracting parties refrain from actions that

will intentionally destroy or injure the other party's right to receive the fruits of the contract."[29]

Plaintiffs allege JSSD breached the covenant of good faith and fair dealing by: (1) transferring

the foreclosed properties to Plaintiffs; (2) failing to properly manage the Bond Proceeds and

assessment funds; and (3) failing to protect the value of the foreclosed properties.

JSSD makes two primary arguments in response to this claim.  First, JSSD argues that it

had the right to transfer the foreclosed properties to Plaintiffs.  Thus, any failure to protect the

value of the foreclosed properties was caused by Plaintiffs.  This argument hinges on the Court

accepting JSSD's interpretation of the Indenture.  As the Court has rejected JSSD's

interpretation, so too must the Court reject this argument.

Second, JSSD argues that this claim seeks to impose new obligations that are not present

in the Indenture.  However, Plaintiffs allege that through various actions and inactions, JSSD

impaired the ability of the property owners to pay the assessments owed and devalued those

properties used as collateral.  As a result, Plaintiffs allege they are unable to recover the amounts

owed.  Such allegations are sufficient to plausibly demonstrate that JSSD intentionally destroyed

or injured Plaintiffs' right to receive the fruits of the contract.  Therefore, the Court will not

dismiss this claim.

---

[28] *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998) (internal quotation marks omitted).

[29] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011) (internal
quotation marks omitted).

D.      UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

Plaintiffs assert claims for unjust enrichment and constructive trust.  Plaintiffs claim that JSSD used bond proceeds to build improvements that are capable of servicing properties outside the Assessment Area, but has not used those fees paid by third parties to repay Plaintiffs.  Additionally, Plaintiffs allege that JSSD used bond proceeds to build improvements that exceed the needs of the assessed property and has failed to use the fees collected to repay them.  As a result, Plaintiffs allege that JSSD has been unjustly enriched and seek a constructive trust.

Plaintiffs' unjust enrichment and constructive trust claims are equitable claims and may be dismissed if the Court "concludes that an enforceable contract exists and governs the subject matter of the dispute."[30]  There is no serious dispute that an enforceable contract exists.  While the parties dispute their rights and obligations under the Indenture, they do not dispute the existence of that agreement.[31]  Therefore, the Court must consider whether the contract covers the subject matter of Plaintiffs' equitable claims.

Plaintiffs argue their equitable claims are not covered by the Indenture because "the express terms of the Indenture do not cover Defendants' collection and use of fees paid by third-parties whose properties are located outside the Assessment Area."[32]  The Court disagrees.  Section 6.6 of the Indenture specifically addresses the source of bond payments.  In part, that section states that the bonds will be paid through Assessments.  The Indenture defines "Assessments" as "all assessments levied against properties within the District pursuant to the

---

[30] *Northgate Village Dev., LC v. Orem City*, 325 P.3d 123, 133 (Utah Ct. App. 2014).

[31] JSSD argues that Plaintiffs breached the Indenture by failing to accept transfer of the foreclosed property, thereby relieving it of any further obligations.  However, for the reasons set forth above, the Court rejects this argument.

[32] Docket No. 33, at 34.

Assessment Ordinance."[33]  "District" is defined as "the Jordanelle Special Service Improvement District No. 2005-2."[34]  Thus, even though the Indenture does not specifically address fees paid by third parties, it does identify those assessments that were to be used to pay the bonds. Therefore, the Indenture covers Plaintiffs' equitable claims and they will be dismissed.

E.      APPOINTMENT OF A RECEIVER

JSSD next argues that Plaintiffs' Fifth Cause of Action, seeking the appointment of a receiver, should be dismissed.  Under Section 8.6 of the Indenture, Plaintiffs have the ability to seek the appointment of a receiver if an Event of Default has occurred.  However, the appointment of a receiver is not a substantive right, it is a remedy.[35]  Courts must consider a variety of factors in determining whether to appoint a receiver.[36]  The fact that the Indenture provides Plaintiffs the ability to seek a receiver does not supplant this analysis.[37]

The parties spend much of their briefs debating whether Plaintiffs are entitled to a receiver.  However, Plaintiffs have not yet sought the appointment of a receiver and that issue is not properly before the Court.  Should Plaintiffs seek the appointment of a receiver during this litigation, they may file an appropriate motion.  Only at that point will the Court consider whether to grant this extraordinary remedy.  The only issue here is whether Plaintiffs' claim

---

[33] Docket No. 14 Ex. C § 1.1.

[34] *Id.*

[35] *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998).

[36] *See Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009).

[37] *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007) (stating that "the court's power to appoint a receiver is discretionary in nature and, consequently, courts may deny receivership applications regardless of a specific [contract] provision for such") (quotation marks omitted).

should be dismissed.  As Plaintiffs merely state a remedy, not an independent cause of action, this claim will be dismissed with the understanding that Plaintiffs may seek the appointment of a receiver as a remedy.

F.      ACCOUNTING

Plaintiffs' Sixth Cause of Action seeks an accounting.  Like Plaintiffs' request for the appointment of a receiver, accounting is a remedy rather than an independent cause of action.[38] Therefore, the Court will dismiss this claim, but will allow Plaintiffs to seek an accounting as a remedy, as they have in their Demand for Relief.

G.      ILLEGAL EXACTION

In their Ninth Cause of Action, Plaintiffs seek a declaration that the water interest exactions imposed by JSSD on the assessed properties are excessive and, therefore, violate state and federal law.  Plaintiffs base this claim on their allegations that before development, JSSD requires property owners in the Assessment Area to dedicate and reserve certain amounts of water.  Plaintiffs allege that "JSSD's water reservation and dedication requirements are disproportionate to the impact water service has on the district and, as a result, they violate state and federal law."[39]

JSSD argues that Plaintiffs' claim should be dismissed because Plaintiffs lack standing, the claim violates the Declaratory Judgment Act, Plaintiffs have failed to exhaust their administrative remedies, the claim is not ripe, and it is not adequately pleaded.

---

[38] *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181, 1193 (D. Utah 2002).

[39] Docket No. 14 ¶ 93.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[40]

"Allegations of possible future injury do not satisfy the requirements of Art. III."[41]  The "injury or threat of injury must be both real and immediate, not conjectural or hypothetical."[42]

The Court agrees that Plaintiffs lack standing.  Plaintiffs' claim is premised on their ownership of the foreclosed properties.  As set forth above, JSSD had no unilateral right to transfer the foreclosed properties and Plaintiffs had no obligation to accept that purported transfer.  As Plaintiffs do not own the foreclosed properties, they have not suffered an injury related to JSSD's reservation and dedication requirements, and lack standing to pursue this claim.  Plaintiffs' argument about the possible impact these requirements may have on the marketability of the foreclosed properties is too speculative to confer standing.

Even if Plaintiffs owned the foreclosed properties and could demonstrate standing, their claim is not ripe.  "The Supreme Court has held that a claim under the Takings Clause of the Fifth Amendment is not ripe until two conditions have been satisfied."[43]  First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision

---

[40] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

[41] *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990).

[42] *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quotation marks omitted).

[43] *Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1281 (10th Cir. 2013).

regarding the application of the regulations to the property at issue."[44]  "Thus, a takings claim may be dismissed as unripe if the plaintiff has not requested a variance from the challenged property restriction."[45]  "Second, the plaintiff must have sought just compensation through the available state procedures and been denied relief."[46]  "Accordingly, a takings claim may be unripe if state law permits a property owner to obtain compensation for the value of the taken property through an action for inverse condemnation but the plaintiff has neither pursued such an action to its completion nor shown that the remedy would be inadequate."[47]

In this case, there is nothing to suggest that JSSD has made a final determination as to what water reservation fee, if any, Plaintiffs would be required to pay assuming they are the owners of the property.  Additionally, there is no evidence that Plaintiffs have sought just compensation.  "Utah provides aggrieved owners means through which to obtain just compensation."[48]  Plaintiffs have not brought an inverse condemnation action under the Utah Constitution.  Therefore, Plaintiffs' takings claim is not ripe.

Plaintiffs also rely on Utah Code Ann. § 17B-1-120(1).  That provision states:

A local district may impose an exaction on a service received by an applicant,
including, subject to Subsection (2), an exaction for a water interest if:
(a) the local district establishes that a legitimate local district interest makes the
exaction essential; and

---

[44] *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).

[45] *Schanzenbach*, 706 F.3d at 1281.

[46] *Id.*

[47] *Id.* at 1281–82.

[48] *J.B. Ranch, Inc. v. Grand Cty.*, 958 F.2d 306, 308 (10th Cir. 1992) (citing Utah Const. art. I, § 22).

(b) the exaction is roughly proportionate, both in nature and extent, to the impact of the proposed service on the local district.[49]

Plaintiffs allege that the water dedication requirement is not proportionate to the proposed development's impact on water service, but does not provide sufficient factual allegations to support a plausible claim. Thus, even if Plaintiffs' claim did not suffer from the jurisdictional defects set forth above, Plaintiffs' allegations are insufficient to survive a motion to dismiss. Therefore, this claim will be dismissed without prejudice.

## IV.  CONCLUSION

It is therefore

ORDERED that Wasatch County's Motion to Dismiss (Docket No. 25) is GRANTED.  It is further

ORDERED that JSSD's Motion to Dismiss (Docket No. 24) and Wasatch County's Joinder (Docket No. 28) are GRANTED IN PART AND DENIED IN PART as set forth above.

This matter is referred to the Honorable David Sam to conduct a settlement conference. The parties are directed to jointly contact Judge Sam to establish a settlement conference date.

DATED this 9th day of December, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[49] Utah Code Ann. § 17B-1-120(1).